# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NILDA DIAZ, ) | |
| ) | |
| Claimant, ) | No. 16 C 6559 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Nilda Diaz ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF Nos. 5, 8.] Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment [ECF No. 13], and the Commissioner has done likewise [ECF No. 20]. For the reasons stated below, Claimant's Motion for Summary Judgment is granted, and the Commissioner's Motion is denied. The decision of the Commissioner is reversed, and the case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

On March 30, 2011, Claimant filed applications for DIB and SSI alleging a disability onset date of June 15, 2010. (R. 58, 171–87.) The claims were denied initially on August 31, 2011, upon reconsideration on January 11, 2012, and after a hearing before an Administrative Law Judge ("ALJ") in a decision dated January 18, 2013. *Id.* at 7–25, 58–61. Claimant requested that the Appeals Council review the ALJ's decision, but her request was denied on November 29, 2013. *Id.* at 1–6.

Claimant, who was originally a resident of Massachusetts, then filed her claim in the United States District Court of Massachusetts pursuant to 42 U.S.C. § 405(g). The Court issued a favorable decision on November 24, 2014 and remanded the case for further administrative proceedings. *Id.* at 577–80. The Appeals Council then transmitted its remand order to ALJ Addison Masengill. *Id.* at 581–84. On July 7, 2015, another hearing was held at which Claimant, who was represented by counsel, testified. *Id.* at 523–55. A medical expert (the "ME") and a vocational expert (the "VE") also appeared and testified. *Id.*

On October 30, 2015, the ALJ issued a written decision. *Id.* at 498–517. In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Act. *Id.* at 517. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since June 15, 2010, the alleged onset date. *Id.* at 506. At step two, the ALJ found that Claimant had the severe impairments of mild lumbar and cervical degenerative disc disease, chronic pain syndrome, trochanteric bursitis, migrainous and muscular headaches, and affective disorder. *Id.* At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the

2

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id.* at 509.

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform work at a light exertional level, except that she must avoid operation of foot/leg controls, overhead lifting/reaching, and bright sunny environments. *Id.* at 510. He also found that Claimant was limited to no more than occasional climbing of ramps/stairs, stooping, kneeling, crouching, and crawling and no more than incidental exposure to extremes of cold or vibration. *Id.* He also limited her to unskilled tasks. *Id.* Next, the ALJ determined that Claimant was illiterate or unable to communicate in English. *Id.* at 516. Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. *Id.* Specifically, the ALJ found that Claimant could work as an office cleaner, assembler electric, and fast food worker. *Id.* Because of this determination, the ALJ found that Claimant was not disabled under the Act. *Id.* at 517.

On November 10, 2015, Claimant requested that the Appeals Council review the ALJ's decision, but her request was denied on April 27, 2016. *Id.* at 486–90. Having changed her state of residence to Illinois, Claimant filed a timely claim in this court. *Id.* at 494.

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

Claimant argues the ALJ's decision must be reversed because the ALJ: (1) improperly evaluated the opinion of the ME and (2) failed to include her limited English speaking and

4

writing abilities in hypothetical questions to the VE. The Court finds that the ALJ committed the first error and thus need not address the second issue.

1.     **The ALJ Did Not Properly Evaluate the ME's Opinion**

An ME named Dr. Kaplan testified at the hearing in this case. (R. 530–37.) The ME rendered a variety of opinions about Claimant's medical impairments and their effects. Of particular note for this case, Dr. Kaplan testified that Claimant's primary impairment was "chronic pain syndrome." *Id.* at 531. Dr. Kaplan testified that this syndrome was "a severe problem" for Claimant. *Id.* The ME stated twice that this impairment would limit Claimant to sedentary work. *Id.* at 532. The ALJ gave significant weight to the ME's testimony that Claimant has chronic pain syndrome and agreed with his testimony regarding the Listings. *Id.* at 509. The ALJ discussed other portions of the ME's testimony but she weighed only one other opinion. *Id.* at 507, 515. The ALJ gave little weight to Dr. Kaplan's opinion that Claimant could do no more than sedentary work. *Id.* at 515. The ALJ said this testimony was inconsistent with "the totality of the evidence" and "particularly" emphasized that Claimant had "no difficulty with ambulation and no use of an assistive device." *Id.*

An "ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). An ALJ also must "build an accurate and logical bridge from the evidence to the conclusion." *Berger*, 516 F.3d at 544. When weighing a medical opinion, "an ALJ is not required to credit every part of [the] opinion just because he credits one part." *Stephens v. Colvin*, 2016 WL 1271050, at *10 (N.D. Ill. Mar. 29, 2016), *aff'd*, 2016 WL 7228705 (7th Cir. Dec. 13, 2016). But an ALJ must explain the logical bridge between the evidence and a decision to give different weights to different parts of a medical opinion so as to allow for meaningful

5

review. *See Smith v. Colvin*, 2016 WL 3849811, at *3 (N.D. Ind. July 14, 2016) ("Interestingly, there's not a single opinion she accepts entirely, which in and of itself isn't a problem. But what *is* a problem is the lack of explanation for the parts she either accepts or discounts . . . ."); *Avery v. Astrue*, 2012 WL 6692120, at *7 (N.D. Ill. Dec. 19, 2012) ("If the ALJ decides not to credit this portion of the ME's opinion, he must give reasons for not doing so."); *Martinez v. Astrue*, 2009 WL 4611415, at *14 (N.D. Ind. Nov. 30, 2009) (". . . [T]he ALJ here must still articulate why she rejected a portion of the ME's testimony that is favorable to the Plaintiff."); *see also Greenwood v. Barnhart*, 433 F. Supp. 2d 915, 927 (N.D. Ill. 2006) ("Thus, even if the ALJ chose not to follow the ME's opinion, he would have to explain why he was rejecting it.").

As an initial matter, it is noteworthy what the ALJ did not cite as a basis for discounting Dr. Kaplan's opinion about Claimant's ability to do sedentary work. The ALJ did not find that Dr. Kaplan's opinions were inconsistent with each other or that Dr. Kaplan miscited or misunderstood the record. During the hearing, Dr. Kaplan identified evidence in the record that supported his opinions. He said that he reviewed the record before the hearing. *Id.* at 530. He cited specific portions of the record upon which his opinions were based. *See, e.g., id.* at 531–34. The ALJ asked Dr. Kaplan whether there were conflicts or inconsistencies in the record, and the doctor answered, "No. I think the record was quite consistent." *Id.* at 534. Based on his review of the record, Dr. Kaplan determined he had sufficient information to form a medical opinion about Claimant's condition. *Id.* at 531. The ALJ's ruling provides no basis to disbelieve these statements.

The ALJ also did not discount Dr. Kaplan's opinion about Claimant's ability to do sedentary work based on another medical opinion in the record to which she gave more weight. The ALJ weighed four medical opinions other than Dr. Kaplan's that related to Claimant's

6

physical (as opposed to her mental) abilities. She gave little weight to an opinion from Disability Evaluation Services indicating that Claimant was disabled. *Id.* at 512. She gave minimal weight to the physical functional capacity assessment of a treating physician who found Claimant to have a number of significant limitations. *Id.* at 513. And she gave little weight to the opinions of two state agency reviewing physicians who said Claimant did not have any severe impairment. *Id.* at 514–15. In other words, the ALJ largely, although not entirely, rejected the only five medical opinions that she considered when determining whether Claimant could do more than sedentary work. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *as amended* (Dec. 13, 2000) ("In giving little or no weight to this finding, the ALJ did not cite to any medical report or opinion that contradicts Dr. Combs's opinion. In effect, the ALJ substituted his judgment for that of Dr. Combs and left unexplained why Clifford's activities were inconsistent with Dr. Combs's opinion.").

The ALJ discounted Dr. Kaplan's opinion "particularly" because Claimant can ambulate effectively without an assistive device. (R. 515.)[2] Even accepting this characterization of the facts as true, though, it is not clear to the Court why that logically justifies rejecting Dr. Kaplan's opinion. There is nothing in Dr. Kaplan's testimony that indicates he restricted Claimant to sedentary work because of an inability to ambulate without an assistive device. In fact, Dr. Kaplan did not discuss Claimant's ability in this regard during his testimony. Moreover, under the Social Security Regulations' definition of "sedentary work," an ability to ambulate without an assistive device is not, on its own, enough to establish that a claimant can do more. Sedentary work is limited to:

---

[2] Claimant disputes the ALJ's assessment and cites evidence supporting her position. The Court need not assess whether the ALJ appropriately chose between conflicting evidence and made a finding supported by substantial evidence. As explained in this Memorandum Opinion and Order, even if the ALJ's factual finding about Claimant's ability to ambulate was proper, remand still would be required because she failed to build a logical bridge to her conclusion to reject Dr. Kaplan's opinion.

7

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Farley v. Massanari*, 21 F. App'x 500, 504 (7th Cir. 2001) (quoting 20 C.F.R. § 404.1567(a)); *see also Ritchie v. Colvin*, 2016 WL 7324567, at *4 (N.D. Ill. Dec. 16, 2016) (quoting 20 C.F.R. § 416.967(a)). There mere fact that Claimant can ambulate without difficult or an assistive device does not mean she can do more than sedentary work. Indeed, the Court is perplexed as to why the ability to do what the ALJ said Claimant could do is "particularly" significant to determining the weight that should be given to Dr. Kaplan's testimony on the matter. Regardless, what is clear is that the ALJ's reference to Claimant's ability to ambulate is not enough to build a logical bridge to her conclusion that Dr. Kaplan's opinion about sedentary work should be given little weight.

That leaves the ALJ's general statement that "the totality of the evidence is more consistent with the limits assessed by the undersigned." (R. 515.) This statement is problematic for a few reasons. As an initial matter, the assertion is opaque and difficult to review. The ALJ concluded that Dr. Kaplan was right when he testified that Claimant had chronic pain syndrome but then discounted his opinion about the limiting effect of that pain because of "the totality of the evidence." The ALJ never explained how the totality of the evidence is different with respect to these two parts of Dr. Kaplan's testimony.

Further, the Court is concerned that the ALJ crossed the boundary from being an independent neutral into the realm of a medical professional. An ALJ cannot build a logical bridge by playing doctor and interpreting medical evidence. *Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009) (quoting *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007)). Here, the

8

ALJ almost entirely rejected every medical opinion in the record other than Dr. Kaplan's, then set her independent assessment of the medical evidence up against Dr. Kaplan's, and chose her own. For this reason, the Court finds the ALJ did more than simply weigh conflicting evidence and crossed the line into playing doctor.

The Commissioner defends the ALJ's decision by focusing on three discrete findings made by the ALJ. The Court understands the Commissioner's position to be that the evidence related to these issues constitutes the "totality of the evidence." The Commissioner first emphasizes that two medical personnel told Claimant she should exercise and be active. But the records cited by the Commissioner are not clearly inconsistent with Dr. Kaplan's opinion. One of Claimant's doctors recommended that she "make attempts with light aerobic activity" (R. 460) and a physician's assistant "encouraged her to work towards becoming more active with doing gentle stretches and cardiovascular activities such as recumbent bicycle" (R. 790). Although the ALJ cited the relevant records memorializing these recommendations, she provided no explanation as to why such minimal activities undercut Dr. Kaplan's opinion.

Next, the Commissioner focuses on the fact that Claimant was capable of performing household chores such as cooking and cleaning.[3] The Commissioner and the ALJ cited one self-report in support of this point. In the report, Claimant stated that she prepared food or meals "weekly" and that it took her about 10 minutes to do so. *Id.* at 205. With respect to cleaning, Claimant said she would do laundry and cleaning when she was "in the mood." *Id.* She explained that she generally would do these tasks for 1 hour at a time and sometimes would work a little longer. *Id.* Claimant said she needed help or encouragement when doing laundry and cleaning, which she received from her children and sometimes her friends. *Id.* "[A] person's

---

[3] The Court notes the ALJ discussed other daily activities in her ruling, such as Claimant's ability to drive when she had to, and her trip to see her sick parents in Puerto Rico. *See, e.g.*, R. at 509. The Commissioner has not relied on these other activities in defending the ALJ's decision.

9

ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Particular caution in assessing a claimant's daily activities is merited when, as in this case, they are very limited. There is no indication that the cooking and cleaning that Claimant performed is inconsistent with a restriction to sedentary work. Yet the ALJ provided no explanation as to why such minimal activities justified discounting Dr. Kaplan's opinion.

The final point raised by the Commissioner is that Claimant received only conservative treatment. Almost all of the evidence of conservative treatment cited by the Commissioner relates solely to Claimant's headaches. The only evidence related to treatment for Claimant's chronic pain syndrome cited by the Commissioner shows that she was given a corticosteroid injection, prescribed medication, and advised to become more active. The Commissioner does not explain how this treatment regimen undercuts Dr. Kaplan's opinion. The ALJ's discussion of Claimant's conservative treatment in her ruling was similarly cursory and did not articulate why it was inconsistent with a limitation to sedentary work. *See, e.g.*, R. at 515 (focusing primarily on the recommendation to exercise). Although Claimant's treatment (or lack thereof) may be an appropriate basis for discounting Dr. Kaplan's opinion (which is an issue that the Court need not and will not resolve at this time), the ALJ, at a minimum, did not do enough to connect the dots between the two.

For all of these reasons, the Court finds the ALJ did not build a logical bridge between the evidence and her decision to give Dr. Kaplan's opinion little weight with respect to the

restriction to sedentary work while also giving significant weight to other portions of his testimony.[4]

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 13] is granted, and the Commissioner's Motion [ECF No. 20] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with the Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 1, 2017

---

[4] To be clear, the Court is not now holding, as Claimant argues, that the ALJ should have given greater weight to Dr. Kaplan's opinion. Instead, the Court finds only that the ALJ did not build a logical bridge from the evidence to her conclusion.